Hattie Mae CAMPBELL et al., Plaintiffs,

v.

R. J. MINCEY, Chairman of the Board of Trustees of the Marshall County Hospital, et al., Defendants.

No. WC 74–101–S.

United States District Court,
N. D. Mississippi, W. D.

Nov. 28, 1975.

**18**

John J. Brothers, North Mississippi Rural Legal Services, Holly Springs, Miss., Lewis Myers, Jr., North Mississippi Rural Legal Services, Oxford, Miss., for plaintiffs.

Lowell Grisham, Richard Carlisle, Ethridge, Grisham & Carlisle, Oxford, Miss., L. G. Fant, Jr., Fant, Crutcher, Moore & Spencer, Holly Springs, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

On the morning of March 21, 1974, Hattie Mae Campbell gave birth to her third child, a son whom she named Frederick, under circumstances which counsel for plaintiffs in this case maintains would "disgrace a nation of savages". Whatever the character of the facts surrounding Frederick Campbell's birth, they provide the basis of this litigation.

On August 19, 1974, Ms. Campbell and her son filed suit against the chairman and members of the Board of Trustees of the Marshall County Hospital in Holly Springs, Mississippi, and the Administrator, Chief of Staff, and Director of Nursing at the hospital. The plaintiffs alleged that on the occasion of the birth of her son, Ms. Campbell was refused admittance to the Marshall County Hospital and its emergency room because of her race (she is black) and financial condition (she is indigent). Because Ms. Campbell and her son sought to prosecute the action on behalf of a plaintiff class, an evidentiary hearing to determine whether the suit could be maintained as a class action pursuant to Fed.R.Civ.P. 23(c) was held. At the hearing, evidence was introduced as to the treatment, or lack of treatment, afforded the named plaintiffs by the staff of the Marshall County Hospital on the date of Frederick Campbell's birth. Counsel for the parties subsequently agreed that the case be deemed submitted for decision on the merits on the basis of the testimony introduced at the class hearing. The court reporter has now transcribed his notes of that hearing and the court has received memoranda from counsel supporting their respective positions.

The court ultimately, by way of memorandum of decision and order entered December 4, 1974, denied named plaintiffs the opportunity to represent a plaintiff class in this lawsuit.

The course of events giving rise to this litigation began in the early morning hours of March 21, 1974, when Ms. Campbell was awakened by labor contractions. The child was not expected before April; however, it soon became apparent to Ms. Campbell and her family that delivery would occur somewhat sooner than anticipated. Ms. Campbell, accompanied by her sister, secured the services of a neighbor to drive her from their home some eight miles north of Holly Springs, Mississippi, to Oxford, Mississippi, where Ms. Campbell received prenatal care from a local physician. Upon reaching Holly Springs, the occupants of the automobile concluded that it would not be possible for them to arrive at the Oxford-Lafayette County Hospital, located some thirty miles south of Holly Springs, prior to the birth of Ms. Campbell's child. Ms. Campbell had not previously visited the Marshall County Hospital during the course of the pregnancy here in issue.

Upon arrival at the Marshall County Hospital, Ms. Campbell and her sister entered the emergency room where they encountered a staff nurse. Upon learning that Ms. Campbell was of the opinion that she was about to deliver, the nurse informed Ms. Campbell and her sister that they should go to the hospital in Oxford where Ms. Campbell had received prenatal care and have the baby delivered there. The nurse did call the emergency room doctor, the only physician on duty in the hospital at that time, and informed him that Ms. Campbell's labor contractions were occur-

ring at the rate of one every five minutes, that her water was intact, and that she had been seeing a doctor in Oxford. The emergency room doctor then affirmed the nurse's directive to Ms. Campbell that she should go to Oxford for the delivery of her child.

Following the hospital staff's refusal to admit her, Ms. Campbell and her sister returned to the parking lot where she gave birth on the front seat of the neighbor's automobile.

After Frederick's birth, Ms. Campbell's sister again went into the hospital and requested the nurse to admit Ms. Campbell and her newly-born son. Once again the nurse refused to admit plaintiffs but did go out into the parking lot to look over the mother and child. The only assistance which the nurse provided was in the form of a sheet in which the baby could be wrapped. The nurse did not notify the emergency doctor of the birth of the child and no other post-natal care was afforded mother or child by the staff of the Marshall County Hospital. The staff did, however, summons a Holly Springs ambulance which delivered the mother and child to the Oxford-Lafayette County Hospital where the plaintiffs were promptly admitted and treated. The evidence shows that the mother and son suffered no physical injury due to their inability to gain admittance to and treatment at the Marshall County Hospital. The report of the attending physician at the Oxford hospital indicates Ms. Campbell's delivery was normal in all respects other than the location and the absence of a doctor at the immediate time of the birth.

In addition to their allegation that the defendants' conduct violated their constitutional rights, plaintiffs also maintain that the defendants have violated certain statutory duties imposed upon them pursuant to §§ 41–9–1 through 41–9–35 Miss.Code Ann.

(1972). Considering first this statutory claim, the court has examined the statutes cited by counsel for plaintiffs and finds them irrelevant to the issues litigated in the cause. Sections 41–9–1 through 41–9–35 deal with the licensing of hospitals in the State of Mississippi; sections 41–9–61 through 41–9–119 relate to records to be maintained by licensed hospitals.

The only statute which might be interpreted as imposing a duty upon defendants which is germane to the issues in this lawsuit is § 41–9–17. That section requires hospitals operating within the state to comply with certain "rules, regulations and standards" promulgated by the Mississippi Commission on Hospital Care, failing which their licenses may be revoked pursuant to § 41–9–15. It is readily apparent that § 41–9–17 imposes no duties upon the defendants which are owed to plaintiffs and/or other patients of the Marshall County Hospital, but merely establishes an enforcement system which may be utilized to compel compliance with state regulations governing the operation of hospitals. Further, such duties as are imposed in § 41–9–17 are imposed upon the hospital and not upon its management or employees. The Marshall County Hospital was not named as a party defendant to this suit. Finally, although in their complaint plaintiffs alluded to the provisions of the regulations ostensibly promulgated under § 41–9–17, the record in the case is totally devoid of proof as to the contents of these regulations. Insomuch as state regulations are beyond the scope of judicial notice provided for in the new Federal Rules of Evidence (Rule 201)[1] and also the common law doctrine of judicial notice,[2] the court must hold that plaintiffs have failed to sustain their burden of proof regarding any and all claims under the statutory law of the State of Mississippi.

Turning now to plaintiffs' claim that defendants' conduct on the night of March

---

1. "This rule governs only judicial notice of adjudicative facts." Fed.Rules Evid.Rule 201(a), 28 U.S.C.

2. [T]he doctrine [of judicial notice] applies at common law to *public or general statutes* of the Legislature only." § 2572 Wigmore on Evidence (3rd Ed. 1940) (emphasis in original).

20–21, 1974 constitutes a breach of a common law duty owed plaintiffs, it is plaintiffs' position that both public and private hospitals in this state operating an emergency room must accept, treat, and admit every individual who comes to them seeking assistance. The court can find no cases in this jurisdiction discussing the duty of a hospital to undertake to render emergency treatment to anyone seeking such aid, nor have the parties cited any decisions relative to that duty to the court.[3] However, the court has noted the existence of what may be described as a "trend" in the common law of this country toward imposing liability upon a hospital which refuses to admit and treat, on an emergency basis, a seriously injured person. 35 A.L.R.3d 841, 844. Without discussing each of the more recent cases on the point, the court would observe that, in most instances, liability was predicated upon the defendant's arbitrary refusal to treat the plaintiff in question, which refusal was a marked departure from previous hospital custom and procedure. The refusal of the staff of the Marshall County Hospital to admit or treat the plaintiffs here was in compliance with, rather than a departure from hospital policy not to admit patients who are not referred by local physicians.

The following excerpts from the bylaws of the Marshall County Hospital furnished the motivation underlying the defendants' refusal to treat or admit plaintiffs:

> All inpatients shall be admitted and attended only by members of the medical staff. If during an emergency the attending physician is unavailable then the on call or staff physician may be asked to serve in the emergency. All emergency outpatients shall be attended by members of the medical staff, according to the posted call system or by the staff physician on duty in the hospital.

. . . . .

> In the case of an emergency the physician attending the patient shall be expected to do all in his power to save the life of the patient, including the calling of such consultation as may be available. For the purpose of this section an emergency is defined as a condition in which the life of the patient is in imminent danger and in which any delay in administering treatment would increase the danger.

Both the administrator and chief of staff of the hospital testified as to the manner in which the above-quoted bylaws function to govern the day-to-day operation of the hospital. There are no staff physicians on duty at the hospital between 6:30 PM and 7:00 AM. During those hours, the only physician on duty is the emergency room doctor. The Marshall County Hospital has an agreement with the University of Tennessee Medical School at Memphis under the terms of which the University supplies the hospital with doctors who have completed their general medicine degrees and are pursuing a specialty residence, either in surgery or radiology, at the medical school. The emergency room doctors are not considered to be members of the medical staff of the Marshall County Hospital in the contemplation of the aforequoted bylaws. Because the emergency room doctors are not available to afford follow-up or continuing treatment for in-patients, patients may be admitted to the hospital only upon the authorization of a local physician who is a member of the medical staff.

According to hospital policy, when an individual appears at the emergency room seeking treatment between the hours of 6:30 PM and 7:00 AM, and such individual has not been referred for treatment and/or admission by a local physician, the emergency room doctor will see the individual but only for the limited purpose of determining whether the patient should be treated at the Marshall County Hospital or carried to another facility. That is, the

---

**3.** The only Mississippi case concerning emergency room treatment which the court has been able to locate involved a factual situation wherein the defendant hospital clearly undertook to render emergency treatment to the plaintiff but failed to render such aid in a competent manner. *New Biloxi Hospital, Inc. v. Frazier*, 245 Miss. 185, 146 So.2d 882 (1962).

emergency room doctor exercises his medical judgment as to whether the individual in question can best be treated at the Marshall County Hospital or should be referred to a hospital with better accommodations, expertise, or equipment.

Plaintiffs in the case at bar were twice examined by a staff nurse who determined that no "emergency", as that term is defined by the regulations of the hospital, existed. The nurse's determination that no emergency existed prior to Frederick's birth was confirmed by the emergency room doctor. The nurse's conclusion that no emergency existed after Frederick's birth was confirmed by the report of treating physician in Oxford who recorded his observation that Ms. Campbell's delivery and post-partum recovery was "uneventful" except for a loss of blood during the ambulance trip.

█ While the court is disturbed by the seemingly cursory examinations performed on Ms. Campbell by the staff nurse and by the fact that Ms. Campbell was never examined by the emergency room physician, the court must conclude that plaintiffs suffered no tortious injury at the hands of the defendants on the date in question. This conclusion is primarily compelled by the evidence indicating that the nurse's determination that Ms. Campbell's delivery did not amount to an "emergency" situation, as that term is customarily used in the furnishing of hospital and medical services, was proved substantially correct by subsequent events. Further, neither the emergency room doctor nor the staff nurse was joined as a defendant in the case and the plaintiffs did not allege that their injuries resulted from the failure of this doctor and this nurse to adhere to established hospital procedure. Rather, the basic tenor of plaintiffs' complaint, as the court understands it, is that the hospital regulations concerning operation of the emergency room function in an unconstitutional manner.

Another fact worthy of consideration in determining the propriety of the actions taken by the hospital personnel on the night here in question is that the ambulance which carried Ms. Campbell and her child to the Oxford-Lafayette County Hospital had already arrived at the Marshall County Hospital by the time the nurse became aware that the child had been born. The court feels that the nurse's actions in allowing the plaintiff to proceed to Oxford at that time were reasonable in view of her knowledge that there was no doctor in Holly Springs who accepted obstetric cases and that Ms. Campbell had a regular physician in Oxford, some thirty minutes away by ambulance.

As a final consideration in rejecting plaintiffs' common law claim, it must be remembered that should liability be imposed upon the defendants pursuant to that claim, the hospital (had it been joined as a party) and its personnel would likely be entitled to immunity from monetary damages. It appears to be the prevailing rule in this jurisdiction that public hospitals operated by governmental subdivisions are entitled to immunity from monetary liability for the tortious acts of their employees. *City of Leland v. Leach*, 227 Miss. 558, 86 So.2d 363 (1956). There is, of course, a statute waiving the sovereign immunity of facilities such as the Marshall County Hospital to the extent the directors of the institution have secured liability insurance. § 41–13–37 Miss.Code Ann. (1972). However, there is no proof whatsoever in the record as to the extent, if any, of liability insurance coverage held by the Marshall County Hospital.

█ Turning finally to the constitutional issues raised in the complaint, the plaintiffs claim that they were refused admittance to the hospital and treatment in the emergency room because of their race and indigency. The overwhelming weight of the evidence in the record is to the effect that plaintiffs' race and financial condition had nothing at all to do with the defendants' refusal to admit or treat plaintiffs. The court, as the finder of fact, has concluded that defendants' refusal was based solely on the hospital policy not to admit patients who are not referred by local physicians. In fact, Ms. Campbell herself was a patient of the Marshall County Hospital on the

occasion of a previous pregnancy. The evidence shows that the hospital and its emergency room are used more frequently by blacks than by whites. Plaintiff's claim that she was the victim of racial discrimination is simply untenable.

■ The argument that Ms. Campbell was refused treatment because of her financial condition is likewise unpersuasive. Ms. Campbell had in her possession a Medicaid card which guaranteed payment of her hospital bills. She was never questioned by any member of the hospital staff as to her ability to pay. The proof shows that a large portion of the patients treated in the Marshall County Hospital are Medicaid patients. Plaintiffs offered no proof or even explanation as to why defendants would single out these particular individuals for unfavorable treatment because of their indigency. The court is convinced that there can be no explanation because the claimed discrimination never in fact occurred.

In support of their contention that a constitutional right has been denied them at the hands of the defendants, plaintiffs argue that, even in the absence of racial or financial motivation, the defendants denied plaintiffs the use of a governmental facility in an arbitrary and capricious manner so extreme as to amount to the deprivation of a constitutional right. Plaintiffs maintain that the Equal Protection Clause of the Fourteenth Amendment entitles them to use of the Marshall County Hospital on the same basis as all other individuals and that by refusing them admission and treatment, the defendants infringed this right.

■ In considering plaintiffs' equal protection claim, the court must first identify the classification which has been established and which results in disparate treatment of certain individuals by the Marshall County Hospital. The classes here may be

defined as those persons who are referred to the hospital for admission and treatment by a local physician and those persons who seek admission and treatment at the hospital but have not been referred by a local doctor. It is the policy of the hospital to accept the former and reject the latter.[4] This policy clearly results in different treatment of certain individuals according to the classification into which they fall; however, the fact that a classification has been made, or that different treatment is afforded certain individuals on the basis of that classification, does not of itself establish a violation of the Equal Protection Clause. *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). To establish an equal protection violation, plaintiffs must show that the classification and consequent dissimilar treatment fail to advance any legitimate state interest. *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *Morey v. Doud*, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). The Equal Protection Clause does not prohibit discrimination between persons or groups of persons; it precludes only irrational discrimination. *Goesaert v. Cleary*, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948). "The Equal Protection Clause was not designed to compel uniformity in the face of difference." *Whitney v. State Tax Comm'n*, 309 U.S. 530, 542, 60 S.Ct. 635, 640, 84 L.Ed. 909, 915 (1940).

■ In the final analysis, disposition of this case reduces to a determination of whether the hospital regulations requiring reference of incoming patients by local physicians except in true "emergency" situations operates in a reasonable manner to further a legitimate state objective. On the basis of this record, the court cannot but conclude that the regulation does so

---

4. It could be argued that the classes created by the policies of the Marshall County Hospital are composed of those persons who seek admission to the hospital and are adjudged to be true "emergency" cases by the emergency room doctor and those persons seeking admission who are not considered "emergency" cases pursuant to the hospital by-laws discussed *infra*. However, no evidence was introduced by the parties as to the medical standards upon which emergency situations may be distinguished from non-emergency situations. A determination of this sort is therefore beyond the competency of the court on the basis of this record and is better left to the medical judgment of trained physicians.

function. The operation of the rule in this case resulted in no injury to plaintiffs according to the report of the attending physician at the transferee hospital. There was no evidence introduced which tended to show that true "emergency" cases were refused treatment at the Marshall County Hospital and suffered actual injury thereby. In the absence of some proof that this regulation has or can operate in some manner to inflict an injury upon some individual, the court must accept the considered judgment of the medical specialists who are charged with the responsibility of administering the hospital. Without some concrete evidence to the contrary, the court cannot say that the justification of the regulation offered by the hospital (which was to the effect that a local physician must authorize admission of a patient in order to insure a doctor will be available for follow-up treatment of that patient) is not a reasonable restriction upon the use of this public facility by plaintiffs and other similarly-situated individuals.

In accordance with the foregoing, a final judgment will be entered by the clerk of the court dismissing the complaint and assessing costs to plaintiffs.