Diane FLOYD, et al., Appellants,

v.

**WILLACY COUNTY HOSPITAL DISTRICT, et al., Appellees.**

No. 13–85–375–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 27, 1986.

Rehearing Denied March 20, 1986.

Michael R. Ezell, Harlingen, for appellants.

Peter R. Meeker, Fred E. Davis, Austin, for appellees.

Before UTTER, SEERDEN and BENAVIDES, JJ.

OPINION

UTTER, Justice.

This is an appeal from a summary judgment in a wrongful death action. Appellants, as the legal survivors of Donald Wayne Floyd, deceased, sued the Willacy County Hospital District (the hospital), Dr. Joseph Montgomery-Davis, Martha Regina Birzer Lunsford (Nurse Lunsford) and Upjohn Health Care of the Rio Grande Valley. Summary judgment and a severance order were entered by the trial court disposing of all causes of action asserted against the hospital on the premise that the hospital was immune from liability under the Texas Tort Claims Act.[1] We affirm in part and reverse and remand in part.

On May 9, 1980, the deceased and Ms. Frances Farrell were driving back to Houston from McAllen when the deceased began experiencing chest pains. As they approached Raymondville, the deceased was perspiring heavily and his "color" appeared to be "bad." Ms. Farrell decided to take him to the nearest hospital, which happened to be Willacy County Hospital. Upon arrival at the hospital, the deceased was complaining of pain in his arm and loss of feeling in his hand. Ms. Farrell helped him into the hospital waiting room and then went to get assistance. She first encountered Dr. Montgomery-Davis and told him that she had a man in the waiting room who was very sick and needed help. Dr. Montgomery-Davis told her to speak to Nurse Lunsford. Ms. Farrell told Nurse Lunsford that they were from out of town and had no local physician. According to Ms. Farrell, Nurse Lunsford then told her that since they had no local physician and the hospital's facilities were inadequate, they should go to Valley Baptist Medical Center in Harlingen for treatment.

Nurse Lunsford testified, through deposition, that Dr. Montgomery-Davis told her to tell Ms. Farrell to take the deceased to Valley Baptist because the hospital's facili-

ties were inadequate to deal with his problem and the only cardiac equipment owned by the hospital was already in use. In any event, Ms. Farrell and the deceased left the hospital in an attempt to make it to Valley Baptist for emergency treatment. Mr. Floyd suffered a heart attack enroute and died.

In their first two points of error, appellants assert that they have pled a cause of action under Section 3 of the Texas Tort Claims Act, which states the conditions under which governmental units can be liable for personal injuries or death. The pertinent portion of the Act is as follows:

> Each unit of government in the state shall be liable for money damages for personal injuries or death when so caused [proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising] ... from some *condition or some use* of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state. [emphasis ours][2]

This Section provides for waiver of governmental immunity in three general areas: (1) use of publicly-owned motor vehicles; (2) injuries arising from some condition or use of real property (premises defects); and, (3) injuries arising from some condition or use of personal property. *City of Denton v. Page*, 701 S.W.2d 830 (Tex.1986); *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30 (Tex.1983).

Although appellants assert eleven "particulars" by which they allege that the hospital was negligent, their claim, in essence, is that the hospital was negligent in failing to use available drugs and equipment to render emergency medical care to the deceased.

---

1. TEX.REV.CIV.STAT.ANN. art. 6252–19 (Vernon 1970).

2. *See Lowe v. Texas Tech University*, 540 S.W.2d 297, 299 (Tex.1976) for this interpretation of the meaning of "so caused."

Appellants do not contend that the hospital's refusal to render medical aid to decedent was the result of negligence in the *use* of any tangible property or because of a defect or malfunction in any equipment, but rather, appellants contend that the *non-use* of the tangible property was actually a *misuse* of such tangible property. In contending that they have plead a cause of action within the waiver provision of the Texas Tort Claims Act, appellants rely on several cases.[3] However, a careful reading of these cases reveals that in each instance some use of property was involved and negligence was alleged in connection with the use thereof, or in the failure to supply *additional* equipment. There is no such allegation in the case at bar.

Appellants also rely on *Trinity River Authority v. Williams,* 689 S.W.2d 883 (Tex.1985), as holding that a "non-use" of property will trigger Section 3 of the Texas Tort Claims Act. Appellants have misread *Trinity River Authority.* It was a case involving the dangerous *condition* of property, i.e., a premises defect, not the negligent *use* of property. *Id.* at 885.

■ This is a "non-use" case. *See Green v. City of Dallas,* 665 S.W.2d at 569; *Brantley v. City of Dallas,* 545 S.W.2d at 286. This Court recently addressed the question of whether a "non-use" of property will invoke the waiver provision of Sec-

tion 3 in *Vela v. Cameron County,* 703 S.W.2d 721 (Tex.App.—Corpus Christi 1985, writ pending). Citing the Texas Supreme Court in *Salcedo,* we held that Section 3 is not triggered in such an instance.[4] Accordingly, governmental immunity from liability has not been waived. Appellants' first two points of error are overruled.

Appellants argue, in their third point of error, that the decedent's constitutional rights under the Equal Protection Clause[5] were violated by the hospital because the hospital "categorized out-patients into two different classes: (1) Those who were regular patients of the hospital's staff doctors; and (2) Those who were not regular patients of the hospital's staff doctors." Their argument is that such a distinction violates the Equal Protection Clause because "members of the first class were entitled to both non-emergency and emergency health care services, whereas members of the second class were denied both non-emergency and emergency health care services."[6] Appellants also pled this violation under 42 U.S.C. § 1983 (1981), which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

---

**3.** *Salcedo v. El Paso Hospital Dist.,* 659 S.W.2d 30 (Tex.1983); *Lowe v. Texas Tech University,* 540 S.W.2d 297 (Tex.1976); *Green v. City of Dallas,* 665 S.W.2d 567 (Tex.App.—El Paso 1984, no writ); *Smith v. University of Texas,* 664 S.W.2d 180 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *Jenkins v. State,* 570 S.W.2d 175 (Tex. Civ.App.—Houston [14th Dist.] 1978, no writ); *Clabon v. Harris Co. Hospital District,* 567 S.W.2d 71 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.); *Garcia v. Memorial Hospital,* 557 S.W.2d 859 (Tex.Civ.App.—San Antonio 1977, no writ); *Rodriguez v. Holmes,* 556 S.W.2d 125 (Tex.Civ.App.—San Antonio 1977, no writ).

**4.** The Supreme Court stated that "The negligent conduct, however, must involve 'some condition or use' of tangible property under circumstances where there would be private liability." *Salcedo v. El Paso Hospital Dist.,* 659 S.W.2d at 33.

**5.** U.S. Const. amend. XIV; Tex.Const.art. I, §§ 3, 3a.

**6.** Appellants also argue in their brief that this "two class" categorization infringed upon the decedent's "rights of interstate and intrastate travel" and "deprived [him] of substantial due process rights of life, liberty and privileges guaranteed by the Fifth and Fourteenth Amendments...." These additional contentions were not raised by appellant's pleadings nor were they presented in response to the hospital's motion for summary judgment. Since these constitutional challenges were not presented to the trial court, they will not be considered on appeal as grounds for reversal. *Lynch v. Port of Houston Authority,* 671 S.W.2d 954 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Neagle v. Nelson,* 658 S.W.2d 258 (Tex.App.—Corpus Christi 1983), *rev'd on other grounds,* 685 S.W.2d 11 (Tex.1985).

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ A suit for wrongful death is a cause of action conferred by statute upon the surviving husband, wife, children, and parents of the decedent. *City of Houston v. Stoddard,* 675 S.W.2d 280 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Tarrant County Hospital District v. Jones,* 664 S.W.2d 191 (Tex.App.—Fort Worth 1984, no writ); Tex.Rev.Civ.Stat. Ann. art. 4675 (Vernon 1952). The plaintiff in a wrongful death action may assert any cause of action that the decedent could have asserted had he survived. *Vassallo v. Nederl-Americk Stoomv Maats Holland,* 162 Tex. 52, 344 S.W.2d 421 (1961).

■ Although appellants pled that this "two-class" categorization of patients deprived the deceased of his constitutional right "to be *treated equally* by the Willacy County Hospital ... even though no rational governmental purpose served as the basis for such distinction [emphasis ours]," pleadings do not constitute summary judgment proof. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Miller v. Soliz,* 648 S.W.2d 734 (Tex.App.—Corpus Christi 1983, no writ). Appellants, in their response to the hospital's motion for summary judgment, failed to assert their claim of liability against the hospital based upon the deprivation of constitutional rights as alleged in their petition. However, the non-movant is not required to answer or respond to the motion for summary judgment in order to contend on appeal that the grounds expressly presented to the trial court by the movant were insufficient as a matter of law. *Miller v. Soliz,* 648 S.W.2d at 739. It is the *movant's* burden to establish his entitlement to summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense. *Id.*

In its motion for summary judgment, the hospital relied upon sovereign immunity to defeat "any ground of recovery" alleged by appellants. The hospital's summary judgment proof went only to the issue of "some condition or use of tangible property," and wholly failed to address the consitutional deprivation claim.

We now turn to whether appellants have stated a cause of action based on an equal protection violation. As stated above, appellants contend that the hospital had a policy which "categorized out-patients into two different classes," depending upon whether the person seeking treatment was a regular patient of a staff doctor. Appellants base this contention on a handwritten memorandum prepared by the Director of Nursing Service and circulated to the nursing staff. Nurse Lunsford testified by deposition that it was her understanding that the memorandum reflected hospital policy. The memorandum is as follows:

Attention to All. Please do not make the mistake of ignoring this notice or failing to read it. *Do not call* a doctor re. a pt. [patient] who does not have a family doctor here—*unless*, it is *obviously* a matter of life or death. (Regardless of how much pain the person is in.) You have no idea how much trouble this causes the hospital and doctors and ultimately *yourself* if you do it. When you call a doctor (or suggest that *the pt.* call the doctor) for a pt. who does not have a family doctor here, *you violate hospital policy* and set the hospital and the doctor up for all sorts of problems you can't possible be aware of. The first time you do, you will have a counseling session with Mr. Oaks and myself. If it happens a second time, you will lose your job. [emphasis in original]

The hospital concedes that this memorandum was prepared by its Director of Nursing Service and circulated as an "inter-departmental communication," but denies that it was approved by the Board of Directors as hospital policy.

■ Contrary to the hospital's position that it is immune from claims based upon

42 U.S.C. § 1983, liability can be imposed "under § 1983 for monetary, declaratory or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Flores v. Edinburg Consolidated Independent School District,* 554 F.Supp. 974, 984 (S.D. Tex.1983), *rev'd on other grounds,* 741 F.2d 773 (5th Cir.1984). Further, "liability can also be imposed for deprivations caused by governmental custom and usage, even though such custom or usage has not received formal or written approval." *Flores v. Edinburg Consolidated Independent School District,* 554 F.Supp. at 984. Although a governmental policy may be valid on its face, it can be unconstitutional if applied and administered in an unequal or arbitrary manner so as to make unjust and illegal discriminations between people similarly situated. *Colorado River Western Railway v. Texas and New Orleans Railroad Co.,* 283 S.W.2d 768 (Tex.Civ. App.—Austin 1955, writ ref'd n.r.e.) (citing *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)).

A similar question was addressed in *Campbell v. Mincey,* 413 F.Supp. 16 (N.D. Miss.1975), *aff'd,* 542 F.2d 573 (5th Cir. 1976); a case with facts strikingly similar to the case before us. In *Campbell,* plaintiff was awakened by labor contractions, although her child was not yet due. Realizing that she was about to deliver her baby, plaintiff obtained the help of a neighbor to drive her to her hospital, the Oxford-Lafayette County Hospital (Oxford), located nearly forty (40) miles from her home. It soon became apparent that they could not reach the Oxford hospital prior to the birth of plaintiff's child. They then proceeded to the nearest hospital, Marshall County Hospital. Upon arrival at the Marshall County Hospital emergency room, plaintiff met a nurse. Upon learning that plaintiff was about to deliver and had no local physician, the nurse told plaintiff that she should go to Oxford, which was some thirty miles away, to have her baby. The nurse called an emergency room doctor who affirmed the nurse's directive to go to Oxford. Following this refusal of treatment, plaintiff returned to the parking lot where she gave birth to her child on the front seat of the car. After the birth, she again requested admission to the hospital and was again refused. An ambulance was called which took plaintiff and her child to the Oxford hospital where they were admitted.

The refusal of the Marshall County Hospital staff to admit plaintiff was predicated upon a hospital policy of refusing to admit patients who are not referred by local physicians, except in the case of emergencies, in which case "the emergency room doctor will see the individual but only for the limited purpose of determining whether the patient should be treated at the Marshall County Hospital or carried to another facility." [i.e., to determine if a "true emergency" exists] *Id.* at 20. Plaintiff contended that "the Equal Protection Clause of the Fourteenth Amendment entitled [her] to use of the Marshall County Hospital on the same basis as all other individuals and that by refusing [her] admission and treatment, the defendants infringed this right." *Id.* at 22.

The court began its discussion by identifying the classification which resulted in the disparate treatment by the Marshall County Hospital.

> The classes here may be defined as those persons who are referred to the hospital for admission and treatment by a local physician and those persons who seek admission and treatment at the hospital but have not been referred by a local doctor. It is the policy of the hospital to accept the former and reject the latter. [footnote omitted] This policy clearly results in different treatment of certain individuals according to the classification into which they fall; however, the fact that a classification has been made, or that different treatment is afforded certain individuals on the basis of that clas-

**736**

sification, does not of itself establish a violation of the Equal Protection Clause. [citation omitted] *To establish an equal protection violation, plaintiffs must show that the classification and consequent dissimilar treatment fail to advance any legitimate state interest.* [emphasis ours]

*Id.* at 22.

■ The State may impose special burdens or restrictions on a certain class of people with respect to ordinary rights if the disparate treatment is based upon a reasonable and not arbitrary classification and bears a rational relationship to a legitimate state interest. *Sax v. Votteler,* 636 S.W.2d 461 (Tex.App.—Texarkana 1982), *aff'd in part and rev'd and remanded in part on other grounds,* 648 S.W.2d 661 (Tex.1983).

The *Campbell* Court concluded as follows:

> In the final analysis, disposition of this case reduces to a determination of whether the hospital regulations requiring reference of incoming patients by local physicians except in true 'emergency' situations operates in a reasonable manner to further a legitimate state objective.

*Campbell v. Mincey,* 418 F.Supp. at 22–23.

A portion of testimony given by Nurse Lunsford before the Board of Nursing Examiners was read into the record at Dr. Clark's deposition. Her testimony was that hospital policy, as expressed to her, was that vital signs are not to be taken from a patient unless that patient is admitted to the emergency room. It is not disputed that Mr. Floyd's vital signs were not taken. Dr. Clark testified that the taking of vital signs is "one of the first basic premises of care for a patient with any emergency event, certainly an ischemic heart event ... the vital signs are the first thing you do after you get the patient into a bed and get him comfortable." We fail to see how it could be determined that Mr. Floyd was *not suffering from a* "true emergency or life threatening situation," or "a condition which was *obviously* a matter

of life or death," without at least checking his vital signs.

It may be argued that the failure to determine that Mr. Floyd's condition did in fact present a "true emergency" is nothing more than a case of negligence. However, it must be remembered that the basis for having to make this determination stems from the hospital's policy of treating only those patients with staff doctors except where "it is *obviously* a matter of life or death."

■ The "trouble" and "problems" allegedly incurred by the hospital and doctors, as expressed in the handwritten memo set forth earlier, are much too general to articulate any legitimate objective. As stated earlier, a policy otherwise valid on its face can be unconstitutional if applied and administered in an unequal or arbitrary manner. It could be that appellants can show a pattern of denying care to "true emergencies" where the patient does not have a staff doctor and treating "true emergencies" where the patient does have a staff doctor. Appellants may also be able to establish that the very determination of what is a "true emergency" is made in such an arbitrary and capricious manner as to be unconstitutional. *See Beck v. State,* 583 S.W.2d 338 (Tex.Crim.App.1979).

The hospital has not advanced any summary judgment proof identifying a rational basis for the classification allegedly created by its policy. The hospital's plea of sovereign immunity was not in itself enough to show that it was entitled to judgment as a matter of law. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Spencer v. City of Seagoville,* 700 S.W.2d 953 (Tex.App.—Dallas, 1985, no writ).

The summary judgment granted the hospital as to the allegation of a violation of equal protection is REVERSED and REMANDED for trial. The judgment is otherwise AFFIRMED.