Naomi **ROBINSON, et al, Appellants,**

v.

**CITY OF SAN ANTONIO, Appellee.**

No. 04–86–00228–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 18, 1987.

Rehearing Denied March 16, 1987.

Phil Hardberger, San Antonio, Larry Zinn, San Antonio, for appellants.

Baldemar A. Jimenez, Charles S. Frigerio, Paula Dlugosz, Asst. Legal City Atty., San Antonio, for appellee.

Before BUTTS, DIAL, CHAPA, JJ.

DIAL, Justice.

This is an appeal from a summary judgment granted in favor of appellee, City of San Antonio. Appellants are Naomi Robinson and her fifteen year old son, Paul Carmona. Appellants sought damages, alleging that the negligence of city employees resulted in the death of four year old Melissa Robinson who was Robinson's daughter and Carmona's sister.

The facts giving rise to the suit are as follows. Naomi Robinson married Quincy Robinson on January 5, 1979. Paul Carmona was a product of a prior marriage. In 1980 Melissa Robinson was born. The Robinson marriage was marred by family violence, and in June 1984, the couple divorced. At the time of the divorce Naomi Robinson got a protective order prohibiting Quincy from (1) committing family violence; (2) directly communicating with a member of the family or household in a threatening or harassing manner; and (3) going to or near the residence or place of employment or business of a member of the family or household.

On October 1, 1984, Quincy Robinson came to appellants' apartment complex. Appellant Naomi Robinson called the police, told them of the protective order, and asked for help. Meanwhile, Quincy found Melissa and carried her off. Appellant again called the police. Two policemen arrived. She showed them the protective order, told them that Quincy had taken Melissa without permission, that he was violent and that he might hurt Melissa. The policemen read the protective order, said they could do nothing and left. After calling around, Naomi found Quincy at his apartment. While she talked to him on the phone, friends called the police again. While on the phone with Quincy, Naomi heard several shots. When the police arrived at Quincy's apartment a few minutes later, they found that Quincy had committed suicide. Before he did so, he shot and killed Melissa.

Appellants bring four points of error on appeal. Appellants do not dispute the facts giving rise to the case. Appellants contend that the record is unclear as to the basis

for the granting of the city's motion for summary judgment and that three possible bases exist, none of which are sufficient.

■ The first possible basis is that the city had immunity because the acts alleged involved a governmental function (i.e., police protection) as opposed to a proprietary one. Appellants take the position that, assuming a governmental function, this finding alone cannot support a summary judgment; it simply raises the question as to liability under exceptions listed in the act and that the city has the burden to negate each exception. This leads us to the second possible basis for summary judgment listed by appellants, Section 101.055(3) of the Texas Tort Claims Act. This reads in pertinent part:

This chapter does not apply to a claim arising:

\* \* \* \* \* \*

(3) From the failure to provide or the method of providing police or fire protection.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.055(3) (Vernon 1986).

Appellants assert that there is no governmental immunity under § 101.055(3) because the negligence in this case arose from the implementation of policy as opposed to policy itself. They cite *State v. Terrell,* 588 S.W.2d 784, 788 (Tex.1979), for the proposition that if negligence lies in the formulation of policy, the government has immunity; however, if an officer or employee is negligent in carrying out the formulated policy, liability may exist under the act.

Appellants argue that at the time Melissa was killed, the San Antonio Police Department had a policy of enforcing protective orders as well as a general policy of arresting people when there is probable cause to believe that the person has or is committing an offense. Appellants urge that because the negligence arose from the carrying out of these policies, there is no governmental immunity. In their response to defendant's motion for summary judgment, appellants direct the court to General Order 84–8 dated May 2, 1984, concerning police policy with respect to protective orders and in effect on October 1, 1984. Section 2.04 reads:

As violations of Protective Orders are Misdemeanor offenses, officers shall arrest for said violations when an offense is committed in their presence or view, however, if evidence is present to constitute another offense, the person shall be arrested for the highest offense committed.

We fail to see any violation of police policy by the officers who responded to appellee's call for assistance. Section 2.04 requires arrest for a violation of a protective order only when an offense is committed in the officer's presence or view. These facts are not present in the case before us. Nor were the circumstances such as to justify arrest of Quincy Robinson by the officers without an arrest warrant. The officers were not negligent in carrying out police policy. They in fact carried out the policy exactly as it had been formulated and the government is immune from tort liability in the formulation of the policy. *State v. Terrell,* 588 S.W.2d at 788.

In appellants' third possible basis they speculate that the court may have granted the motion relying on Section 101.021(2) of the act. This section waives sovereign immunity when "personal injury and death [are] caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX.CIV.PRAC. & REM.CODE § 101.021(2) (Vernon 1986). Appellants argue that the "use of tangible property" includes the misuse of or the failure to properly use tangible property, that the protective order constitutes tangible property, and that the failure to enforce or properly use the protective order was a proximate cause of Melissa's death.

Before addressing this argument, we must first determine whether it is properly before us. This argument was not before the trial court in either appellee's motion for summary judgment or appellants' response to said motion. Prior to entry of the summary judgment order, appellants

filed a motion to reconsider the granting of the summary judgment and a brief in support thereof in which this argument appeared for the first time. This motion is akin to the late filing of a response allowed under Rule 166–A(c) on leave of court. *See* TEX.R.CIV.P. 166–A(c). The trial court allowed this motion to be filed, and a hearing was held at which time the motion was denied. We find no abuse of discretion by the trial court in denying this motion. The motion raised no new fact issues and dealt solely with a question of law, i.e., whether a protective order can be considered tangible property.

 We are of the opinion that a protective order does not constitute tangible property. Tangible property is understood to be property that is capable of being handled, touched or seen. *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686 (Tex.Civ.App. —Austin 1980, writ ref'd n.r.e.). The protective order was in fact a decision and pronouncement by a district court approving an agreement between the parties in a civil suit. The fact that the agreement was reduced to writing and filed with the court did not make it tangible property. Neither would a copy of the order in plaintiff's possession be tangible property.

All of the cases cited by appellants actually involved tangible real or personal property which was defective or was used improperly by an agent of a governmental entity or under his supervision. They are therefore distinguishable from our present case which does not involve tangible property.

 Appellants finally allege that the officers' failure to remove the gun from the possession of Quincy Robinson was negligence which resulted in the use of tangible property (the gun) which caused Melissa's death.

This issue is expressly raised for the first time before this Court. It was not set out in any written response to the motion for summary judgment. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. TEX.R.CIV.P. 166–A(c).

Appellants' points of error are overruled, and the summary judgment is affirmed.