Amelia **MONTOYA**, Wife of Joe Ysabel Montoya, Deceased, Appellant,

v.

**JOHN PETER SMITH HOSPITAL,** and Tarrant County Hospital District, d/b/a John Peter Smith Hospital, Appellees.

No. 2–88–026–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 27, 1988.

Rehearing Denied Dec. 8, 1988.

**362**

Lowell E. Dushman, Dushman & Friedman, P.C., Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Randall D. Moore, Asst. Dist. Atty., Fort Worth, for appellees.

Before FENDER, C.J., and KELTNER and LATTIMORE, JJ.

## OPINION

LATTIMORE, Justice.

This is an appeal from a summary judgment denying Amelia Montoya ("Amelia") recovery against Tarrant County Hospital District ("Hospital") under the Texas Tort Claims Act. TEX.CIV.PRAC. & REM. CODE ANN. sec. 101.021 (Vernon 1986). Amelia has perfected this appeal from the summary judgment.

We affirm.

On November 4, 1983, Amelia accompanied her husband, Joe Montoya ("Joe"), to the Hospital emergency room. Amelia informed the triage nurse that her husband was sick. The triage nurse assesses new patients in the emergency room and assigns priority to patients by the severity of their problems. Emergency room doctors see patients in the priority assigned by the triage nurse. The triage nurse uses a triage slip to record her evaluation and assign priority. Amelia alleges the triage nurse told Joe to wait, and Joe did not receive any attention until he collapsed one and one-half hours later. The Hospital contends Joe was kept waiting only one or two minutes. After Joe collapsed, the triage nurse filled out a triage slip. Joe died of a heart attack.

On May 24, 1984, Amelia filed a medical malpractice action in the 48th District Court of Tarrant County seeking damages for the wrongful death of Joe. The Hospital filed its motion for summary judgment asserting the Hospital was entitled to governmental immunity because Amelia's petition did not allege a cause of action within an exception to the Hospital's governmental immunity. On January 5, 1988, the trial court granted the Hospital's motion for summary judgment.

In her sole point of error, Amelia contends the trial court erred in granting the motion for summary judgment. Amelia contends the Hospital is liable under Texas Civil Practice and Remedies Code Annotated section 101.021, because Joe's death was caused by the misuse of tangible personal property.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Mont-*

*gomery*, 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American*, 391 S.W.2d at 47.

Texas Civil Practice and Remedies Code Annotated section 101.021 provides as follows: "A governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas Law." Therefore, Amelia's contention the Hospital is liable due to the failure to use the triage slip raises two related issues. First, should the statute's waiver of immunity for accidents involving the "use" of tangible personal property be interpreted to include waiver of immunity for liability arising from accidents involving the nonuse or failure to use tangible property? Second, is a triage slip "tangible personal property" within the meaning of the statute?

 It is undisputed that the nurse filled out the triage slip after Joe collapsed. Amelia does not contend that using the triage slip after Joe collapsed contributed to his death. Instead, Amelia argues the failure to use the triage slip before Joe collapsed contributed to his death. The Texas Supreme Court has considered whether failure to use tangible property will support a cause of action under the Act. *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32–33 (Tex.1983) (construing the prior law, TEX.REV.CIV.STAT.ANN. art. 6252–19, sec. 3 (Vernon 1970) identical language on relevant points). In *Salcedo*, the plaintiff argued the defendant misused, by failing to use, certain medical equipment. The plaintiff further alleged the defendant misused an electrocardiograph by misinterpreting the graphs produced by the equipment. *Salcedo*, 659 S.W.2d at 31. The court defined use in the context of the Act as "to put or bring into action or service; to employ for or apply to a given purpose," and held that reading the electrocardiogram graph was within that definition because reading and interpreting are purposes for which a graph is employed. *Sal-*

*cedo*, 659 S.W.2d at 33 (quoting *Beggs v. Texas Dept. of Mental Health & Ret.*, 496 S.W.2d 252, 254 (Tex.Civ.App.—San Antonio 1973, writ ref'd)). The court did not specifically state that an allegation of failure to use property does not state a cause of action within the Act, but we interpret the court's definition of "use" to exclude "nonuse" or failure to use property. The failure to use the triage slip does not state a cause of action within this construction of the Act. *Accord Floyd v. Willacy County Hosp. Dist.*, 706 S.W.2d 731, 733 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (failure to use drugs and equipment to render emergency medical care does not state a cause of action); *Vela v. Cameron County*, 703 S.W.2d 721, 724–25 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (failure to assign lifeguards at park does not state a cause of action); *Brantley v. City of Dallas*, 545 S.W.2d 284 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) (hospital's refusal to render services does not involve use of property).

Without citing *Salcedo*, Amelia argues several other opinions have held that failure to use tangible personal property falls within the waiver of immunity under the Act. *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528 (Tex.1975) (refusing writ n.r.e.; per curiam); *Mokry v. University of Tex. Health Science Ctr.*, 529 S.W.2d 802 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.); *City of Houston v. Arney*, 680 S.W.2d 867 (Tex.Civ.App.—Houston [1st Dist.] 1984, no writ); *Garcia v. Memorial Hospital*, 557 S.W.2d 859 (Tex.Civ.App.—San Antonio 1977, no writ); *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex.1976); *Clabon v. Harris Cty. Hospital Dist.*, 567 S.W.2d 71 (Tex.Civ.App.—Houston [14th Dist.], writ ref'd n.r.e.). With the exception of *Arney*, each of these cases have been distinguished by previous courts because "in each instance some use of property was involved and negligence was alleged in connection with the use thereof, or in the failure to supply *additional* equipment." *Floyd*, 706 S.W.2d at 733 (emphasis in original); *see also Velasquez v. Jamar*, 584 S.W.2d 729, 732 (Tex.Civ.App.—Tyler 1979, no writ.); *Brantley*,

545 S.W.2d at 286. *Arney* is also distinguishable in that it involved the use of files and records. *Arney*, 680 S.W.2d at 874.

Appellant also contends the triage slip was misused because it was not used before Joe collapsed. Whether it is possible to misuse an item without using it is an interesting linguistic point, but the point is not relevant. The word "misuse" does not appear in the Act. We agree with the Hospital's argument Amelia has failed to state a cause of action within the Act because no tangible personal property was "used."

■ Amelia's claim must fail for a second reason. The triage slip is not tangible personal property within the meaning of the Act. In *Salcedo*, the Texas Supreme Court held an electrocardiogram graph is tangible personal property. *Salcedo*, 659 S.W.2d at 33. As noted earlier in this opinion, the court also held the graph was used when a doctor read and interpreted the graph because "reading and interpreting are purposes for which an electrocardiogram graph is used or employed." *Id.* Using this rationale, other written records may also be tangible personal property within the meaning of the Act. *Arney*, 680 S.W.2d at 874 (medical files and records are tangible personal property). The San Antonio Court of Appeals distinguished previous cases when they held a written protective order is not tangible personal property. *Robinson v. City of San Antonio*, 727 S.W.2d 40, 43 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). The San Antonio court reasoned that tangible property is property that is being capable of being handled, touched, or seen. *Id.* The court held the protective order was a decision by a district court, and the fact the decision was reduced to writing did not transform the decision into tangible property. *Id.* From this, a written record may be tangible when it records a tangible situation, as in *Salcedo*, or intangible when it records an intangible idea, as in *Robinson*, Amelia contends the triage slip, the blank form, was tangible personal property. Joe's situation, like the situation in *Salcedo*, was quite tangible, but the blank triage slip did not record his condition. Therefore, under the circumstances of this case, a blank form does not satisfy the Act's requirement of tangible personal property. If Amelia's allegations are taken as true, Joe's death was caused by the negligence of the triage nurse in failing to timely attend to Joe in the emergency room. *Compare Brantley*, 545 S.W.2d at 286. The existence of a blank form, the triage slip, is merely incidental to the alleged negligence.

The Texas Supreme Court noted the Act is ambiguous and subject to broad or narrow interpretations. *Salcedo*, 659 S.W.2d at 32. The court also recognized the Act should be liberally construed to achieve the purpose of allowing plaintiffs to state a cause of action under the Act. *Id.* However, it is difficult to imagine a case against the State where it will not be possible to allege the existence of a blank form. The construction of the Act urged by Amelia would render ineffective the Act's requirement of tangible personal property. Accordingly, Amelia's point of error is overruled.

The summary judgment in favor of the Hospital is affirmed.