NUMBER 13-04-182-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

CITY OF McALLEN,                                                  Appellant,

 

                                           v.

 

ROSA
HERNANDEZ,                                                  Appellee.

 

 

 

                   On appeal from the 92nd  District
Court

                           of Hidalgo
County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

                 Before Justices Yañez,
Castillo and Garza

                  Memorandum Opinion by Justice Castillo

 

This interlocutory
appeal stems from a suit by Rosa Hernandez against the City of McAllen for an
alleged premises defect and special defect. 
The City appeals the trial court's denial of its plea to the
jurisdiction.  We reverse and remand.








I.  Background[1]

On August 23, 2000,
Hernandez walked toward the intersection of Tenth Street and Houston Street in
McAllen, Texas.  On that corner, two
sidewalks meet and form a pie-shaped sidewalk section which opens onto
crosswalks in both directions.  This
pie-shaped sidewalk section is where the traffic-light pole with the button to
activate the pedestrian crossing sign is located.  The drainage box[2]
in question is located to the side of the pie-shaped sidewalk section, with a
grassy area between the sidewalk and the concrete top of the drainage box.  As she walked, Hernandez left the sidewalk
and crossed over the drainage box.  When
she stepped on the box, the shop-made lid[3]
gave way and tilted, causing her to fall. 
Hernandez's right leg fractured when she fell partially into the
drainage box.  Hernandez filed suit based
on the theories of premises liability and special defect. 

II. Issue on Appeal

The City asserts that
"[T]he District Court does not have jurisdiction to hear this case because
the City of McAllen has not waived its sovereign immunity."  

 








III. Jurisdiction

Our initial inquiry is always whether we have
jurisdiction over an appeal.  Garcia v. Comm'rs Court of Cameron County,
101 S.W.3d 778, 779 (Tex. App.BCorpus Christi 2003, no pet.) (citing Tex. Ass'n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d   440, 443 (Tex.
1993)).  We are obligated to determine,
sua sponte, our own jurisdiction.  Id.
(citing N.Y. Underwriters Ins. Co. v. Sanchez,
799 S.W.2d 677, 678 (Tex. 1990) (per curiam)).  Jurisdiction of a court is never
presumed.  Id. at 783.  Our jurisdiction is established exclusively
by constitutional and statutory enactments. 
Id. at 784; see
Tex. Civ. Prac. & Rem. Code Ann. '
51.014 (Vernon Supp. 2004-05).  Unless
one of the sources of our authority specifically authorizes an interlocutory
appeal, we only have jurisdiction over an appeal taken from a final judgment.  Garcia, 101 S.W.3d at 784.  Absent an express grant of authority, we do
not have jurisdiction to review an interlocutory order.  Id.  If the record does not affirmatively
demonstrate our jurisdiction, we must dismiss the appeal.  Id. 


The Texas Civil Practice and Remedies Code grants us
jurisdiction to hear an interlocutory appeal from an order granting or denying
a plea to the jurisdiction by a governmental unit.  See Tex.
Civ. Prac. & Rem.
Code Ann. ' 51.014(a)(8) (Vernon Supp. 2004‑05).  It is undisputed that the City is such a
governmental unit.  See id. ' 101.001(3)(B) (Vernon 2005).  Accordingly, we conclude that we have
jurisdiction to consider the issues raised on appeal.








IV. Standard of Review








This appeal is strictly limited to our review of the
trial court's ruling on the plea to the jurisdiction.  Tex.
Civ. Prac. & Rem. Code Ann. '
51.014(a)(8) (Vernon Supp. 2004-05).  A plea to
the jurisdiction is the vehicle by which a party contests the trial court's
authority to determine the subject matter of the cause of action.  State v. Benavides, 772 S.W.2d 271,
273 (Tex. App.BCorpus Christi 1989,
writ denied).  The plaintiff bears the
burden of alleging facts affirmatively demonstrating the trial court's
jurisdiction to hear a case.  Tex.
Ass'n of Bus., 852 S.W.2d at 446; Mission Consol. Indep. Sch. Dist. v.
Flores, 39 S.W.3d 674, 676 (Tex. App.BCorpus Christi 2001,
no pet.).  Whether a pleader has alleged
facts that affirmatively demonstrate a trial court's subject matter
jurisdiction is a question of law reviewed de novo.  Tex. Dep't of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004). 
Likewise, whether undisputed evidence of jurisdictional facts
establishes a trial court's jurisdiction is also a question of law.  Id.  To
determine whether the plaintiff has affirmatively demonstrated the court's
jurisdiction to hear the case, we consider the facts alleged by the plaintiff
and, to the extent it is relevant to the jurisdictional issue, the evidence
submitted by the parties.  Tex.
Natural Res. Conservation Comm'n v. White, 46 S.W.3d 864, 868 (Tex.
2001).  If a plaintiff pleads facts that
affirmatively demonstrate an absence of jurisdiction and such defect is
incurable, immediate dismissal of the case is proper.  Peek v. Equip. Serv. Co., 779 S.W.2d 802,
804-05 (Tex. 1989); City of Austin v. L.S. Ranch, 970 S.W.2d 750, 753
(Tex. App.BAustin 1998, no
pet.).  However, the mere failure of a
petition to state a cause of action does not show want of jurisdiction in the
court.  Bybee v. Fireman's Fund Ins.
Co., 331 S.W.2d 910, 917 (1960).  If
the plaintiff's pleadings are insufficient to demonstrate the court's
jurisdiction, but do not affirmatively show incurable defects in jurisdiction,
the proper remedy is to allow the plaintiff an opportunity to amend before
dismissing.  County of Cameron v.
Brown, 80 S.W.3d 549, 554‑55 (Tex. 2002); Peek, 779 S.W.2d at
804-05.  

Like the trial court, we must construe the pleadings
in the plaintiff's favor and look to the pleader's intent.  Brown, 80 S.W.3d at 554-55.  Our task is not to determine the merits of
the case but rather to examine the petition, taking as true the facts pled, and
determine whether those facts support jurisdiction in the trial court.  Baston v. City of Port Isabel, 49
S.W.3d 425, 427-28 (Tex. App.BCorpus Christi 2001, pet. denied).

V.  Law on
Statutory Construction








This case is based on provisions of the civil
practice and [COMMENT1] remedies
code, and specifically the Texas Tort Claims Act.  See Tex.
Civ. Prac. & Rem.
Code Ann. ' 101.001-.109 (Vernon 2005).  Our primary objective when construing a
statute is to ascertain and give effect to the legislature's intent.  See McIntyre v. Ramirez, 109 S.W.3d
741, 745 (Tex. 2003); Kroger Co. v. Keng, 23 S.W.3d 347, 349 (Tex.
2000).  In discerning that intent, we
begin with the plain and common meaning of the statute's words.  McIntyre, 109 S.W.3d at 745.  In construing a statute, a court may consider the
(1) object sought to be obtained; (2) circumstances under which the statute was
enacted; (3) legislative history; (4) common law or former statutory
provisions, including laws on the same or similar subjects; (5) consequences of
a particular construction; (6) administrative construction of the statute; and
(7) title (caption), preamble, and emergency provision.  Tex.
Gov't Code Ann. ' 311.023 (Vernon
2005).  We must read the statute as a
whole and not just isolated portions.  See
City of San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003).  If the statutory language is unambiguous, we
must interpret it according to its terms, giving meaning to the language consistent
with other provisions in the statute. 
See McIntyre, 109 S.W.3d at 745. 
Additionally, if the statutory text is unambiguous, a court must adopt
the interpretation supported by the statute's plain language unless that
interpretation would lead to absurd results. 
Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,
145 S.W.3d 170, 177 (Tex. 2004).  We
presume that the legislature would not do a useless act.  Webb County Appraisal Dist. v. New Laredo
Hotel, 792 S.W.2d 952, 954 (Tex. 1990). 


VI.  Sovereign
Immunity








Sovereign immunity, unless waived, protects the
State of Texas from lawsuits for damages absent legislative consent.  Gen. Servs. Comm=n. v. Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001).  Sovereign immunity encompasses two principlesBimmunity from suit and immunity from liability.  Fed. Sign v. Tex. S. Univ., 951 S.W.2d
401, 405 (Tex. 1997).  Immunity from
liability protects the State from judgments, even where there is an express
consent on the part of the legislature to permit a suit.  Id. 
Immunity from liability is an affirmative defense that must be pled or
else it is waived.  Tex. Dep't of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999) (citing Davis v. City of
San Antonio, 752 S.W.2d 518, 519-20 (Tex. 1988)).  Immunity from suit, on the other hand, bars a
suit against the State unless the State expressly gives consent to the
suit.  Fed. Sign, 951 S.W.2d at
405.  Immunity from suit then deprives a
trial court of subject matter jurisdiction over the governmental agency, even
if liability is undisputed.  Travis
Co. v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 248 (Tex. 2002)
(citing Jones, 8 S.W.3d at 638). 

Subject matter jurisdiction is never presumed and
cannot be waived.  Tex. Ass=n of Bus.,
852 S.W.2d at 443-44.  Since a
governmental unit is protected from suit by sovereign immunity, pleadings in a
suit against a governmental unit must affirmatively demonstrate, either by
reference to a statute or express legislative permission, that the legislature
consented to the suit.  Jones, 8
S.W.3d at 638.  Absent the State's
consent to suit, the trial court has no jurisdiction.  Id.

VII. Waiver of
Sovereign Immunity-Dangerous Conditions of Real Property








The City asserted in
its plea to the jurisdiction and on appeal that it has not waived sovereign
immunity, and therefore the trial court does not have jurisdiction over this
suit.  As a general rule, government
entities are immune from tort liability under the doctrine of sovereign
immunity unless the legislature has waived immunity.  Harris County v. Dillard, 883 S.W.2d
166, 168 (Tex. 1994).  The Tort Claims
Act provides a limited waiver of sovereign immunity, allowing suits to be
brought against governmental units only in certain, narrowly defined
circumstances.  Id. (citing
Dallas County Mental Health & Mental Retardation v. Bossley, 968
S.W.2d 339, 341 (Tex. 1998) ("the Legislature intended the waiver in the
Act to be limited")).  Whether a
particular claim falls within an exception from the general doctrine of
sovereign immunity is entirely dependent on the statutory language.  Bossley, 968 S.W.2d at 341.  Therefore, "we must look to the terms of
the Act to determine the scope of its waiver," Kerrville State Hosp. v.
Clark, 923 S.W.2d 582, 584 (Tex. 1996), and then must consider the
particular facts of the case before us to determine whether it comes within
that scope.  Bossley, 968 S.W.2d
at 341.  "Mere reference to the Tort
Claims Act does not establish the state's consent to be sued and thus is not
enough to confer jurisdiction on the trial court."  State Dep't of Crim. Justice v. Miller,
51 S.W.3d 583, 587 (Tex. 2001). 

Section 101.021 of the
Texas Civil Practice and Remedies Code states that a government unit in this
state is liable for "personal injury and death so caused by a condition or
use of tangible personal or real property if the governmental unit would, were
it a private person, be liable to the claimant according to Texas
law."  Tex. Civ. Prac. & Rem. Code Ann. ' 101.021 (Vernon 2005).  To allege a claim pursuant to the tort claims
act that involves a condition of the property, it is sufficient to allege that
defective or inadequate property contributed to injury.  Salcedo v. El Paso Hosp. Dist., 659
S.W.2d 30, 31 (Tex. 1983).  








A.  Premises Defect

       Hernandez alleged that the shop-made
lid, placed in an area adjacent to the roadway, constituted a premises defect
and that (1) the shop-made lid violated the City engineering standards and
created an unreasonable risk of harm to Hernandez, (2) the City of McAllen knew
of the condition, (3) Hernandez did not know of the dangerous condition, (4)
the City failed to exercise ordinary care to protect Hernandez from this
danger, and (5) the City's failure was a proximate cause of the injury to
Hernandez.








The City asserts that
it is exempted from waiver of immunity under the Act.  The City maintains that the drainage system
is part of the roadway system, and the design of the system is discretionary.  The City urges that the acts and decisions
pertaining to the design and installation of the shop-made lid are
discretionary and hence the City cannot be held liable for Hernandez's
injuries.  In its plea to the
jurisdiction, the City stated that the drainage box in question was smaller
than the standard-sized drainage box, and, as such, the structural integrity of
the box was compromised.  As a result,
the box was subject to breakage.  Mr.
Tabor, working for the City's engineers, and with over thirty years' experience
working with roadways, curbs, and drainage boxes, designed and redesigned the
inlet cover three different times to prevent the breakage, and addressed the
City's concerns with that particular drain box. 
The City asserts that Mr. Tabor designed a smaller cover than normally
used, specifically to prevent breakage. 
The City maintains that the design of the inlet cover in question is a
discretionary act, and therefore the City is immune from suit by
Hernandez.  Additionally, the City points
out that the lack of warning signs, lights or barricades near the drainage box
is the result of yet another discretionary decision, for which it cannot be
held liable.  See Ramirez, 74
S.W.3d at 867.

1.  The Law on Premises Defects








Under section 101.021
of the tort claims act, the State waives governmental immunity for
"injuries arising from some condition or use of real property."  Floyd v. Willacy County Hosp. Dist.,
706 S.W.2d 731, 732 (Tex. App.BCorpus Christi 1986,
writ ref'd n.r.e.).  Section 101.022(a)
states that "if a claim arises from a premise defect, the governmental
unit owes to the claimant only the duty that a private person owes to a
licensee on private property, unless the claimant pays for the use of the
premises."  Tex. Civ. Prac. & Rem. Code Ann. ' 101.022(a) (Vernon 2005).  A property possessor must not injure a
licensee by willful, wanton, or grossly negligent conduct, and must use
ordinary care either to warn a licensee of a condition that presents an unreasonable
risk of harm of which the possessor is actually aware and the licensee is not,
or to make the condition reasonably safe. 
Brown, 80 S.W.3d at 554‑55; State Dep't of Highways
& Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992).  To establish liability, a licensee must prove
that (1) a condition of the premises created an unreasonable risk of harm to
the licensee; (2) the owner knew or reasonably should have known of the
condition; (3) the licensee did not actually know of the condition; (4) the
owner failed to exercise ordinary care to protect the licensee from danger; (5)
the owner's failure was a proximate cause of injury to the licensee.  Payne, 838 S.W.2d at 237 (citing State
v. Tennison, 509 S.W.2d 560, 561 (Tex. 1974)).

2.  Hernandez's Live Pleading








Hernandez asserts that
the lid in question did not meet "the specifications set by the City of
McAllen's Engineering Department for 'Type A' throated inlets," "the
shop-made lid placed on the inlet top by the City . . . created an unreasonably
dangerous condition, " and "this condition was a proximate cause of
injuries to Rosa Hernandez." 
Hernandez alleged that:  (1) James
Tabor, the City's streets and drainage manager, recognized that the lid in
place at that location posed an unreasonably dangerous condition for
pedestrians; (2) the lid did not comply with the City's standards; (3) the City
had actual knowledge of the dangerous condition because the City approved the
lid although it allegedly violated the specifications set out by the City's
engineering department; (4) the City's employees were placed on notice each
time they removed the shop-made lid to clean the drainage box; (5) the lid did
not comply with the City's standards relating to "Type A throated
inlets;"[4]
(6) the  lid was the only lid of its kind
on over 6,000 drainage inlet boxes in the city; (7) the City had knowledge of a
dangerous condition of which Hernandez was unaware; (8) no barriers, signs, or
other devices were in place to warn pedestrians that the drainage box did not
meet City or industry standards; (9) the City owed the duty to Hernandez to
warn of or make safe the dangerous condition; and, (10) the City could foresee
that people would walk and stand over the concrete drainage box and shop-made
lid.

Thus, Hernandez
alleged facts to show that:  (1) a
condition of the premises, an inlet cover in place that did not meet the City's
standards, allegedly created an unreasonable risk of harm to her; (2) the City
knew or reasonably should have known that the lid was in place and did not meet
the City's standards because City workers handled and worked around the lid, and
it was the only one of its kind in the City; (3)  she did not actually know of the condition;
(4) the City failed to exercise ordinary care to protect her, as the licensee,
from danger; (5) and the City's failure was a proximate cause of injury to
her.  See Payne, 838 S.W.2d at
237. 

3.  The Law on Discretionary Acts








Whether an act is
discretionary is a question of law.  State
v. Miguel, 2 S.W.3d 249, 251 (Tex. 1999) (per curiam).  Under section 101.056, claims based on the
performance or nonperformance of an act left to the discretion of the
governmental unit are exempted from the waiver of immunity under the Act.  See Tex.
Civ. Prac. & Rem.
Code Ann. ' 101.056 (Vernon
2005); State v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999) (per curiam); Sanchez
v. Matagorda County, 124 S.W.3d 350, 352 (Tex. App.BCorpus Christi 2003,
no pet.).  An act is discretionary if it
requires exercising judgment and the law does not dictate performing the act
with such precision that nothing is left to discretion or judgment.  Rodriguez, 985 S.W.2d at 85.  Immunity is not waived in premises defect
suits based on discretionary acts.  See
Tex. Dep't of Transp. v. Ramirez, 74 S.W.3d 864, 866-67 (Tex. 2002) (per
curiam).  Design decisions are considered
discretionary acts. See, e.g., Mogayzel v. Tex. Dep't of Transp., 66
S.W.3d 459, 465 (Tex. App.BFort Worth 2001, pet.
denied); Mitchell v. City of Dallas, 855 S.W.2d 741, 745 (Tex. App.BDallas 1993) aff'd,
870 S.W.2d 21 (Tex. 1994).  

A governmental
entity's discretion in the design of roadways is protected from liability by
section 101.056(2) of the Tort Claims Act. 
Tex. Civ. Prac.
& Rem. Code Ann.
' 101.056(2) (Vernon
2005); State v. Burris, 877 S.W.2d 298, 299 (Tex. 1994) (per curiam); Maxwell
v. Tex. Dep't of Transp., 880 S.W.2d 461, 463 (Tex. App.BAustin 1994, writ
denied).  The design of a roadway
drainage system is likewise a discretionary act.  See Berry v. City of Reno, 107 S.W.3d
128, 132-33 (Tex. App.BFort Worth 2003, no
pet.).  The decision whether or not to
put safety features such as barriers and guardrails in place is also a
discretionary decision.  See Ramirez,
74 S.W.3d at 867; State v. San Miguel, 2 S.W.3d 249, 251 (Tex. 1999)
(per curiam).

4.  Conclusion








The drainage box in
question constituted part of the City's drainage system, which in turn is part
of the City's road system, see City of Reno, 107 S.W.3d at 132-33, the
design of which constitutes a discretionary act.[5]  Tex.
Civ. Prac. & Rem.
Code Ann. ' 101.056(2) (Vernon
2005); Burris, 877 S.W.2d at 299. 
As the design was a discretionary act, the City's immunity has not been
waived in this instance.  See Tex. Civ.
Prac. & Rem. Code
Ann. ' 101.056 (Vernon
2005); Rodriguez, 985 S.W.2d at 85; Matagorda County, 124 S.W.3d
at 352.  The implementation of the
drainage cover was also a discretionary action on the part of the City.  See Tex.
Civ. Prac. & Rem.
Code Ann. ' 101.056 (Vernon
2005); Rodriguez, 985 S.W.2d at 85; Matagorda County, 124 S.W.3d
at 352.  As such,  the City's immunity has also not been waived
in this instance.  See Tex. Civ.
Prac. & Rem. Code
Ann. ' 101.056; Rodriguez,
985 S.W.2d at 85; Matagorda County, 124 S.W.3d at 352. 

We conclude that
Hernandez did not sufficiently plead facts to establish waiver of the City's
sovereign immunity because the design of the complained-of drainage box,
including the lid, was a discretionary act on the part of the City.  The Tort Claims Act does not waive the City's
immunity with respect to this claim. 

B.  Special Defect








Hernandez
alternatively claimed that the lid constituted a special defect.  She alleged that (1) the shop-made lid
violated City engineering standards and created an unreasonable risk of harm to
Hernandez, (2) the City knew or reasonably should have known of the condition,
(3) the City failed to exercise ordinary care to protect Hernandez from this
danger, and (4) the City's failure was a proximate cause of the injury to
Hernandez.  

1.  The Law

Determining whether a
condition is a special defect or an ordinary premises defect is a question of
law for the court.  City of Grapevine
v. Roberts, 946 S.W.2d 841, 843 (Tex. 1997) (per curiam) (citing Payne,
838 S.W.2d at 238).  We therefore
consider the issue de novo.  Rodriguez,
985 S.W.2d at 85; City of Mission v. Cantu, 89 S.W.3d 795, 808 (Tex.
App.BCorpus Christi 2002,
no pet.).  








A special defect is a
condition that presents an unexpected and unusual danger to ordinary users of
the roadway.  Payne, 838 S.W.2d at
238-39; City of El Paso v. Bernal, 986 S.W.2d 610, 611 (Tex. 1999) (per
curiam).  A special defect is generally
limited to those conditions which occur on the surface of the roadway.  Cantu, 89 S.W.3d at 808 (citing Payne,
838 S.W.2d at 238).  A special defect is
distinguished by some unusual quality outside the ordinary course of events,
and a longstanding, routine, or permanent condition is not a special
defect.  Stokes v. City of San Antonio,
945 S.W.2d 324, 326‑27 (Tex. App.BSan Antonio 1997, no
pet.); Harris County v. Smoker, 934 S.W.2d 714, 718‑19 (Tex. App.BHouston [1st Dist.]
1996, writ denied); see Mitchell, 855 S.W.2d at 747‑48.  In considering whether a condition
constitutes a "special defect," size of the condition should be
considered.  Morse v. State, 905
S.W.2d 470, 475 (Tex. App.BBeaumont 1995, writ
denied) (holding that ten‑inch drop‑off at least 65 feet in length
along a shoulder that prevented car's left wheels from reentering the roadway
once they had slipped off was a special defect).  The condition needs to be analogous to and of
the same degree as "excavations or obstructions on highways, roads, or
streets."  Tex. Civ. Prac. & Rem. Code Ann. ' 101.022(2) (Vernon
2005); Johnson v. Tex. Dep=t of Transp., 905 S.W.2d 394, 399
(Tex. App.BAustin 1995, no writ);
County of Harris v. Eaton, 573 S.W.2d 177, 178‑79 (Tex. 1978)
(oval‑shaped hole 6 to 10 inches deep extending across 90 percent of
roadway, which caused car traveling at 35 miles per hour to flip over); Smoker,
934 S.W.2d at 719 (uncovered storm sewer hole located on part of street where
pedestrian would normally walk); Cf. Roberts, 946 S.W.2d at 842
(disapproving of appellate court's holding that special defect existed where
woman unexpectedly lost her balance descending steps due to unusual height of
the first step, attempted to take the next step and stepped into a hole in the
sidewalk step where the concrete had cracked and crumbled away); Bernal,
986 S.W.2d at 611 (holding in a case where a woman tripped that a "worn or
depressed area . . . approximately 3 feet by 6 feet in size with a depth of 3
inches" in a sidewalk was not a special defect).








The limitation of the
government's duty to claimants does not apply to the government's duty to warn
of special defects such as excavations or obstructions on highways, roads, or
streets or to the duty to warn of the absence, condition, or malfunction of
traffic signs, signals, or warning devices as is required by Section
101.060.  Tex. Civ. Prac. & Rem. Code Ann. ' 101.022(b) (Vernon 2005).  Where a special defect exists, the government
unit owes the same duty to users as a private landowner owes to an
invitee.  Payne, 838 S.W.2d at
237.  An invitee must prove that (1) a
condition of the premises created an unreasonable risk of harm to the invitee;
(2) the owner knew or reasonably should have known of the condition; (3) the
owner failed to exercise ordinary care to protect the invitee from danger, and
(4) the owner's failure was a proximate cause of injury to the invitee.  Payne, 838 S.W.2d at 237 (citing Tennison,
509 S.W.2d at 561).  

2.  Analysis

We conclude that the
shop-made lid does not constitute a special defect.  See Roberts, 946 S.W.2d at 843.  Mr. Tabor, working for the City's engineering
department, designed the drainage box in question to be smaller and thus
"different" from the other drainage boxes in the city.  See City of San Antonio, 945 S.W.2d at
326-27.  "[A] longstanding, routine,
or permanent condition is not a special defect" though.  See id.  (emphasis added).  While we have not been informed as to how
long the "shop-made lid" had been in place, the drainage box and its
attendant parts, including the lid, are permanently in place.  The City set the particular drainage box,
with the shop-made lid, in place in order to prevent the breakage experienced
with the earlier drainage boxes in that location.  That the City intended the box to be
permanent is not disputed.








Additionally, we
realize that a special defect is a condition that presents an unexpected and
unusual danger to ordinary users of the roadway.  Payne, 838 S.W.2d at 238-39.  No one disputes that the drainage box
constitutes part of the roadway, see City of Mission, 89 S.W.3d at 808,
but we must also consider whether Hernandez was an "ordinary user" of
the roadway.  See id.  Two sidewalks converge on the corner of Tenth
and Houston Streets.  At that point, the
sidewalks form a pie-shaped concrete area that slopes down to street level,
abutting two crosswalks which span the streets in both directions.  The traffic-light pole is attached to the
ground in this pie-shaped area, and the button that controls the crosswalk
safety signs is attached to that pole. 
The drainage box is not on the corner where the streets meet.  It is bordered by the street on one side, the
pie-shaped cement area where the sidewalks meet on another side, and the
sidewalk on a third side.  The drainage
box is flanked by a grassy area separating (1) the sidewalk, (2) the cement top
portion of the drainage box, and (3) the cement pie-shaped section on the
corner.  Hernandez left the sidewalk and
crossed the grass and the drainage box in order to get to the street rather
than continuing on the sidewalk to the corner and approaching the street from
there.  When she stepped on the shop-made
lid, it gave way and tilted, causing her to fall.  We conclude that as Hernandez left the
sidewalk instead of continuing on the sidewalk to the corner in order to get to
the crosswalk and cross the street, she was not an "ordinary user" as
the law provides.  See City of Mission,
89 S.W.3d at 808.

3.  Conclusion








As to Hernandez's
special defect claim, we conclude that as (1) immunity has not been waived as
the decision to implement the shop-made lid as part of the drainage box was a
discretionary decision of the City, see Tex. Civ. Prac. & Rem. Code Ann. ' 101.056 (Vernon 2005); Rodriguez, 985
S.W.2d at 85, (2) that the lid was intended to be and in fact was a permanent
condition, see City of San Antonio, 945 S.W.2d at 326-27, and (3)
Hernandez was not an ordinary user of the roadway, see City of Mission,
89 S.W.3d at 808, Hernandez did not allege facts sufficient to show waiver of
the City's immunity as to her special defect claim.  See Miranda, 133 S.W.3d at 226.

VII.  Disposition 

We sustain the City's
sole issue on appeal.  We conclude that
the City's plea to the jurisdiction should have been granted as to Hernandez's
claims for premises defect and special defect. 
Accordingly, we reverse the order of the trial court and remand for
further proceedings commensurate with this opinion.  See id.

 

ERRLINDA CASTILLO

Justice

 

 

 

Memorandum Opinion delivered and filed

this 22nd day of August, 2005.

 











[1] In a
civil case, this Court will accept as true the facts stated unless another
party contradicts them.  See Tex. R. App. P. 38.1(f).  





[2] The
drainage box can be described as the concrete casing for a sewage drain, which
drains water from the street surface, and a manhole cover-type lid on top of
the concrete casing.  The top of this
concrete casing, where the lid is, sits adjacent to the sidewalk on the street
corner in question.  The actual drain
opens up toward the street, at the curb level, to allow water to run off into
the drain.





[3] The
"shop-made lid" resembles a manhole cover, only smaller.  It is also referred to as an "inlet
cover" throughout the pleadings.

 





[4]
Hernandez's petition states that the drainage inlet is a "Type A throated
inlet" as per the City of McAllen's Engineering Department.





[5] We
note that Hernandez maintained in her response to the City's plea to the
jurisdiction that the actions of the City were not discretionary and were
instead maintenance-related.  We are not
persuaded by this argument as the cited case law dealt with allegations of
failure to maintain, clean and inspect areas of the roadway, see City of
Fort Worth v. Gay, 977 S.W.2d 814, 816‑17 (Tex. App.B Fort
Worth 1998, no pet.), rather than, as here, allegations that the decision to
implement a particular design caused the injury. 















 [COMMENT1]R